UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL R. GORDON AND REBECCA W.
GORDON,

        Plaintiffs,

        -against-

VIRGIN ATLANTIC AIRWAYS LIMITED,

        Defendant.

**COMPLAINT**

Plaintiffs Michael R. Gordon and Rebecca W. Gordon (together, "Plaintiffs"), by and through their attorneys, GordonLaw LLP, as and for their Complaint in this action, hereby allege as follows:

## NATURE OF THE ACTION

1. This case is brought primarily under the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 (2000) (the "Montreal Convention"), although Plaintiffs also bring supplemental state law claims under the laws of the State of New York.

2. Article 19 of the Montreal Convention provides that air carriers such as and including Defendant Virgin Atlantic Airways Limited ("Virgin Atlantic") are liable for damages caused by delay in the carriage by air of passengers, luggage or cargo.

3. This is exactly what happened to Plaintiffs: they were substantially damaged because Virgin Atlantic lost and delayed the carriage of Plaintiffs' luggage.

4. On or about March 6, 2022, Plaintiffs purchased through American Express two round trip, business class tickets to travel on Virgin Atlantic on June 19, 2022 from New York's

John F. Kennedy International Airport ("JFK") to Tel Aviv, Israel, with a stopover at Heathrow Airport ("Heathrow"), London, England.

5.      Despite numerous international reports of massive luggage handling delays and disruptions all across Europe in the weeks leading up to June 19, 2022, Virgin Atlantic (a) failed to timely notify Plaintiffs about those delays and disruptions and the attendant possibility, if not likelihood, that Plaintiffs' luggage would not arrive with them at their final destination, (b) failed to take reasonably available measures to ensure that Plaintiffs' luggage would be given the priority treatment they purchased with their business class tickets, (c) lied about all passenger luggage being on board when their plane left Heathrow for Israel, and (d) failed to provide any ground support at Ben Gurion Airport in Israel ("Ben Gurion"), Plaintiffs' final destination.

6.      As a result, Plaintiffs, who were traveling to Israel for three weeks of vacation, meetings, and education, checked their three bags with no warning of potential luggage delay issues, boarded their flight to Heathrow believing their luggage was safely stowed aboard, and then fully relaxed when the captain announced that they flight was substantially delayed precisely so that ***all passenger luggage could be loaded on to the plane.***

7.      Despite Virgin Atlantic's assurance that all passenger luggage had been loaded on to the plane, when Plaintiffs arrived at Ben Gurion Airport in Israel ("Ben Gurion") on June 20, 2022, they discovered that, while other passengers on their flight, including those who had purchased economy tickets, were able to retrieve their luggage, Plaintiffs' luggage was not loaded on to the plane.

8.      Plaintiffs thus found themselves in Israel for a three-week with only the clothes on their backs, some books and other miscellaneous carry-on items, and no idea when they would be reunited with their luggage.

9.      Eventually, on June 27, 2022, one week after checking their luggage with Virgin Atlantic, Plaintiffs finally received their luggage, but even then only after Virgin Atlantic mis-delivered the luggage to the wrong location, ignoring Plaintiffs' clear and repeated instructions on where to deliver the luggage, and only after a third party volunteered to deliver Plaintiffs' luggage to them.

10.     Virgin Atlantic's reckless, if not willful, misconduct (*a*) caused Plaintiffs to be deprived the benefit of the business class tickets they purchased, as Virgin Atlantic did not provide Plaintiffs with priority luggage treatment, (*b*) left Plaintiffs with no choice but to waste precious vacation time and a substantial amount of money buying replacement clothes, including modest and appropriate Sabbath wear for Ms. Gordon, toiletries, everyday wear, and fitness gear, and (*c*) marred Plaintiff's trip to Israel.

11.     Put simply, Virgin Atlantic's blatant disregard of plainly visible warning signs and failure to take the most basic steps to prevent and mitigate passenger disruption caused Plaintiffs to suffer substantial damage that could have been avoided.

12.     Under these circumstances, the Montreal Convention's damages cap that might otherwise have applied to Plaintiffs' claims under that treaty is inapplicable.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this case because the claims herein are being brought pursuant to the Montreal Convention, a treaty to which the United States is a party, which raises a federal question within the meaning of 28 U.S.C. § 1331.

14.     This Court also has supplemental jurisdiction over Plaintiffs' related New York state law claims pursuant to 28 U.S.C. § 1367 because those state law claims are so closely

related to the claims brought under the Montreal Convention that they form part of the same case or controversy under Article III of the United States Constitution.

15.     This Court has personal jurisdiction over Virgin Atlantic because Virgin Atlantic contracted with Plaintiffs within the State of New York, regularly does business in the State of New York, has registered to do business in New York as a foreign business with the New York Secretary of State, and, upon information and belief, maintains multiple offices in the State of New York.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (*a*) Plaintiffs are citizens and residents of the State of New York, (*b*) Virgin Atlantic regularly does business in and, upon information and belief, maintains multiple offices in the State of New York, and (*c*) the acts and omissions at issue here occurred primarily at JFK, which is located in the State of New York.

### THE PARTIES

17.     Plaintiff Michael Gordon ("Mr. Gordon") is citizen and resident of the State of New York, residing at 5 Flintlock Ridge Road, Katonah, New York.

18.     Plaintiff Rebecca Gordon ("Ms. Gordon") is a citizen and resident of the State of New York, residing at 5 Flintlock Ridge Road, Katonah, New York.

19.     Upon information and belief, Virgin Atlantic is foreign business corporation that regularly does business in the State of New York, is registered with the New York Secretary of State to do business in the State of New York, regularly uses 405 Lexington Avenue, New York, NY, United States, 10174, as its address for service of process, and regularly maintains other offices to conduct business in the State of New York.

## THE FACTUAL BACKGROUND

20.     On or about March 6, 2022, Plaintiffs purchased two roundtrip business class Virgin Atlantic tickets to travel from JFK to Israel on June 19, 2022 with a stopover at Heathrow; the flight from Heathrow to Ben Gurion was scheduled to land on June 20, 2022.

21.     The flight numbers for the two flights Plaintiffs took on June 19-20, 2022 were, respectively, DL5996 from JFK to Heathrow, and DL5937 from Heathrow to Ben Gurion.

22.     Plaintiffs' ticket numbers were 0067694462216 (Mr. Gordon) and 0067694462219 (Ms. Gordon).

23.     The price of the tickets that Plaintiffs purchased was $8,773.66.

24.     Plaintiffs' flight was scheduled to leave JFK on June 19, 2022 at 8:15 am Eastern Standard Time ("EST").

25.     On June 19, 2022, Plaintiffs left home for JFK at approximately 4:00 am EST.

26.     Plaintiffs arrived at JFK at or about 5:11am EST.

27.     At that hour, there was little wait at the business class counter, and so Plaintiffs had checked their luggage and received their boarding passes at approximately 5:25am EST.

28.     Virgin Atlantic checked Plaintiffs' luggage all the way through to Israel, issuing three luggage claim receipts, one for each bag that Plaintiffs checked.  True and accurate copies of those luggage claim receipts, which bore numbers 4932249445-447, are annexed as Exhibit 1 hereto, incorporated by reference herein and made a part hereof.

29.     After clearing the security checkpoint and arriving at the Virgin Atlantic Business Class lounge, Mr. Gordon took out his phone and saw that, at 5:35am EST, Virgin had sent the following email notification to him:

[D]ue to significant luggage system failures at Heathrow Airport Terminal 3 across this weekend, we are seeing delays in the processing of customer luggage and this is resulting in luggage arriving late to our aircrafts.

We are working closely with Heathrow Airport to ensure that you travel with your luggage, however this may not be possible and your bags may not be loaded on your flight. If you have essential items you may need for your flight (e.g. medication, toiletries and basic clothing), please ensure these are placed in your hand luggage before arriving at check in.

If you can travel with hand luggage only, please consider this as an option for your flight today. Remember that certain items are not permitted to be taken through security.

30.    A true and accurate copy of the email June 19, 2022, 5:35am email, which acknowledged the luggage fiasco at Heathrow and suggested traveling "with hand luggage only," is annexed as Exhibit 2 hereto, incorporated by reference herein, and made a part hereof.

31.    Prior to the June 19, 2022, 5:35am EST email from Virgin Atlantic, Plaintiffs had received no notifications, advisories, or warnings of any kind from Virgin Atlantic regarding any problems with luggage and were unaware of the baggage chaos in Europe.

32.    As a result, Plaintiffs packed in their carry-on bags only small and incidental items, laptop computers, and books.

33.    Plaintiffs' clothes, toiletries, and other essentials for their three-week trip abroad were all packed in the three bags checked with Virgin Atlantic, supposedly destined for Israel.

34.    When Plaintiffs arrived at Heathrow, they went promptly directly to the gate for the second leg of their trip, to Israel.

35.    However, the flight from Heathrow to Ben Gurion was substantially delayed.

36.    On the ground, Virgin Atlantic offered no explanation for that delay.

37.    However, after Plaintiffs boarded their plane to Israel from Heathrow, they heard the captain announce, over the intercom system to the entire plane, that Virgin Atlantic was

severely understaffed, that their flight to Israel was delayed because of luggage loading problems, but that the plane would not leave until all three bags were loaded.

38.     Approximately 1.25 hours after the plane was scheduled to depart Heathrow, the captain announced, again on the intercom system, that all passenger luggage had been loaded successfully on to the plane and so the delay was justified.

39.     The captain's announcement was false – Plaintiffs' luggage was not on board.

40.     After arriving at Heathrow, Plaintiffs learned for the first time that, on June 15, 2022, there were multiple press reports of widespread chaos at Europe's airports, including England, in the weeks leading up to June 19, 2022.

41.     As one report stated, the situation was so bad that "[t]he UK government has ordered airlines to cancel flights now, rather than later, to prevent last minute misery for travellers. The demand comes after weeks of chaos across European airports, with thousands of holidaymakers facing delays, queues and cancellations." *See*

https://www.euronews.com/travel/2022/06/15/uk-airport-chaos-brexit-blamed-as-thousands-of-brits-are-still-stuck-abroad.

42.     Three days later, on June 18, 2022, two days before Plaintiffs were scheduled to leave JFK, a public news report appeared in Euronews with this caption: "Chaos at Heathrow Airport as a luggage system malfunction causes pile-up." *See*

https://www.euronews.com/2022/06/18/chaos-at-heathrow-airport-as-a-luggage-system-malfunction-causes-pile-up.

43.     Another June 18, 2022 report included this photograph of the luggage chaos at Heathrow, Virgin Atlantic's hub and base location:



44.    Here is another photograph of the luggage chaos appearing in the press on June

18, 2022:



45.     Upon information and belief, Virgin Atlantic, a company based in England, was aware or should have been aware of the massive luggage problems at Heathrow before June 19, 2022 and could easily have warned Plaintiffs, as Plaintiffs had provided their contact information to Virgin Atlantic.

46.     As all luggage was bar-coded and traceable, Virgin Atlantic knew or should have known that Plaintiffs' luggage was not on board when the plane left Heathrow; therefore, either the Virgin Atlantic captain deliberately lied to the passengers to keep them in the dark about the unloaded luggage, or someone on the Virgin Atlantic ground crew lied to the captain.  Either way, Virgin Atlantic lied and proceeded to depart Heathrow without Plaintiffs' luggage.

47.     When Plaintiffs arrived at Ben Gurion, they went to the luggage claim area and discovered that their three checked bags had not been loaded on to the plane and thus were not in Israel.

48.     Plaintiffs saw that other passengers, some of whom were seated in economy class, retrieved their luggage from the designated baggage carousel at Ben Gurion.

49.     After wasting more than hour for their luggage to arrive, Plaintiffs saw the baggage carousel stop and realized their luggage was not going to arrive – at that point, Plaintiffs went to the Ben Gurion luggage problem desk.

50.     There, Plaintiffs completed and gave to the Ben Gurion luggage officer a lost luggage form, known as a "Property Irregularity Form."   A true and accurate copy of Plaintiffs' Property Irregularity Form Receipt is annexed as Exhibit 3 hereto, incorporated by reference herein, and made a part hereof.

51.     Plaintiffs recorded on the Property Irregularity Form that they would be staying at a resort in the southern part of Israel known as Beresheet, from June 20, 2022 until the morning of June 23, 2022 and then would be leaving Beresheet and moving to an apartment located at 9 Keren Hayasod Street in Jerusalem.

52.     Although Virgin Atlantic's web site states that in case of luggage delay "[w]e have baggage services staff at every airport we fly into. If our staff are not present by the baggage belt, you'll find them at a service desk within the baggage hall area," there was no Virgin Atlantic representative or Virgin Atlantic baggage services staff present when Plaintiffs arrived at Ben Gurion.

53.     Plaintiffs wasted approximately three hours waiting for luggage that never arrived and standing in the long queue for the one Ben Gurion luggage officer at Ben Gurion that day.

54.     When they completed and handed in their Property Irregularity Form, Plaintiffs left Ben Gurion in the car they rented and drove to Beresheet.

55.     Along the way, Plaintiffs made a stop in the city of Beersheva, Israel.

56.     Instead of touring and sightseeing in the biblical city of Beersheva, which they had planned to do, Plaintiffs had waste time shopping in a Beersheva shopping mall.

57.     As Plaintiffs had no clothes with them other than what they were wearing and had none of the toiletries and other personal items they had brought with them for their trip, they were forced to purchase substitute clothes, toiletries and a few other essentials.

58.     Even then, Plaintiffs did not have the clothes and personal effects that would have made their vacation, the resort portion of which was to have been an early 34th wedding anniversary trip, more meaningful and enjoyable.

10

59.     The following table lists those items and their costs (the receipts themselves are annexed as Exhibit 4 hereto, incorporated by reference herein, and made a part hereto):

| Receipt | Date | Store | Items purchased | Cost – NIS/ USD$[1] |
|---|---|---|---|---|
| 1 | 20/6/22 | H&M | Bathing suit and underwear (RG)[2] | 448.60/129.65 |
| 2 | 20/6/22 | Nike | Workout clothes (RG)[3] | 504.60/145.84 |
| 3 | 20/6/22 | Columbia | Casual clothes (RG)[4] | 569.80/164.68 |
| 4 | 23/6/22 | Columbia | Causal clothes (MG)[5][6] | 179.90/51.99 |
| 5 | | | INTENTIONALLY DELETED | |
| 6 | 20/6/22 | Tevah Naot | Shoes (RG) | 379.00/109.54 |
| 7 | 20/6/22 | Castro | Bathing suit and 2 shirts (MG) | 299.70/86.62 |
| 8 | | | INTENTIONALLY OMITTED | |
| 9 | | | INTENTIONALLY OMITTED | |
| 10 | 20/6/22 | Zara | Casual shirts and dress (RG) | 524.70/151.65 |
| 11 | 23/6/22 | Tommy Hilfiger | Dress shirts for Sabbath events (MG) | 778.00/224.86 |
| 12 | 23/6/22 | Makor | Casual clothes (MG) | 89.00/25.72 |
| 13 | 20/6/22 | Superpharm | Toiletries and other essentials (RG/MG) | 215.10/62.17 |
| 14 | 23/6/22 | Superpharm | Toiletries and other essentials (RG/MG) | 68.70/19.86 |
| 15 | | | INTENTIONALLY OMITTED | |
| 16 | 24/6/22 | Supersol | Suntan lotion (RG/MG) | 49.90/14.42 |
| 17 | 24/6/22 | Miss Lagotte | Clothes for Sabbath (RG)[7] | 3,297/952.89 |
| 18 | 23/6/22 | Foot locker | Sneakers (MG) | 780/225.43 |
| 19 | 23/6/22 | Ahava | Skin protection (RG/MG) | 398/115.03 |
| 20 | 23/6/22 | Nike | Workout clothes (MG) | 671/193.93 |
| Total NIS/$ | | | | NIS 9254.40/ USD$2674.57 |

60.     During the following days between June 20 – 23, 2022, Plaintiffs repeatedly attempted by email, WhatsApp, telephone, text, and through the World Tracer platform

---

[1]     NIS = New Israel Shekel, currently pegged at 3.46 NIS to the U.S. Dollar.
[2]     RG = Rebecca Gordon
[3]     For pre-arranged special workout events
[4]     For everyday wear
[5]     MG = Michael Gordon
[6]     For everyday wear

[7]     This item, and item no. 11, although relatively expensive, were not extravagances; they were essential.  Mr. and Ms. Gordon packed in their checked luggage beautiful and costly Sabbath-appropriate clothing that they needed to replace because Virgin Atlantic deprived them of the clothing they had packed and intended to wear to Sabbath services, Sabbath dinners, Sabbath lunches, and other Sabbath gatherings they planned to and did attend.  Also, Mr. Gordon needed to purchase clothing for a Board of Directors meeting he was in Israel to attend.

(https://wtrweb.worldtracer.aero/WTRInternet/wtwflowinternet.do?_flowExecutionKey=_cA9B
EDF38-1710-E833-AE33-F8DFE234870D_kDAFE7006-7131-D385-8828-C796D6335E0A) to
speak with or correspond with a Virgin Airlines representative and obtain information about the
location of their luggage and if and when it would be delivered to Plaintiffs.

61.     Virgin Atlantic never provided any information to Plaintiffs about the status of
their missing luggage.

62.     Indeed, to this day, the World Tracer platform, which is the software application
that Virgin Atlantic any many other airlines use to track lost and delayed luggage, still shows:
"Delivery Process Initiated" with no updates. *See* Exh. 5, a screen shot of the relevant web page.

63.     During the following days, between June 20 – 23, 2022, Plaintiffs repeatedly
attempted to remind Virgin Atlantic by email, WhatsApp, text, and the World Tracer Platform
that they would be leaving Beresheet on the morning of June 23, 2022 and not to deliver the lost
luggage, if it were found, to that location.

64.     Plaintiffs reminded Virgin Atlantic that their luggage should be delivered to the
apartment where Plaintiffs would be staying after the morning of June 23:  9 Keren Hayasod
Street in Jerusalem, the address Plaintiffs provided on the Property Irregularly Form they
completed at Ben Gurion on June 20, when they arrived in Israel.

65.     On the afternoon of June 23, 2022, despite Plaintiffs' repeated reminders to
Virgin Atlantic about their itinerary, Virgin Atlantic delivered Plaintiffs' luggage to Beresheet,
where Plaintiffs told Virgin they would ***not be*** at that time.

66.     At the time Virgin Atlantic delivered Plaintiffs' luggage to Beresheet, Plaintiffs
were at their apartment at 9 Keren Hayasod Street in Jerusalem, some three hours north.

67.     The only logical conclusion to be drawn from these facts is that Virgin Atlantic recklessly or willfully chose to ignore Plaintiffs' delivery instructions.

68.     Plaintiffs finally received their luggage on June 26, 2022, only because a Beresheet employee agreed to drive Plaintiffs' three bags to Plaintiffs' apartment in Jerusalem.

69.     Beresheet is approximately 130 miles from Jerusalem, about a 3-hour drive.

70.     Beresheet was not able to arrange for the delivery of Plaintiffs' luggage to them at their apartment on Keren Hayasod Street in Jerusalem before June 26, 2022.

71.     By that time, Plaintiffs had been without their luggage for the entire duration of the resort portion of their trip and throughout the Jewish Sabbath (June 25, 2022).

72.     That meant that Plaintiffs had no choice but to purchase the items identified above, including modest and appropriate Sabbath clothing.

73.     The only time throughout this entire period when Plaintiffs were able to speak with a representative of Virgin Atlantic was on June 21, 2022, when Mr. Gordon spoke by telephone with a man who identified himself only as "Darren" and who claimed to work for the Virgin Atlantic Flying Club, the loyalty program that Virgin Atlantic maintains.

74.     Darren told Mr. Gordon that there was nothing that could be done about the lost luggage, no information could be obtained about Plaintiffs' missing luggage, and Plaintiffs could not leave any information with him.

75.     Incredibly, Virgin Atlantic representative Darren angrily and rudely threatened to hang up on Mr. Gordon if Mr. Gordon continued to ask questions about Plaintiffs' missing luggage.

76.     Darren finally gave Mr. Gordon the name of a company that Darren said was handling the lost luggage.  When Mr. Gordon called that company, the representative of that company laughed and said his company had nothing to do with passenger luggage.

77.     In other words, Virgin Atlantic representative Darren, supposedly working for the loyalty program known as the Virgin Flying Club, deliberately gave Plaintiffs misinformation about the status of their luggage, no doubt to amuse himself at Plaintiffs' expense and avoid having to provide helpful information.

78.     Evidently, Virgin Atlantic cares so little for its passengers, even its loyalty customers, that they allow their representatives to feel comfortable abusing those customers.

79.     The value of the damage Virgin Atlantic caused Plaintiffs to suffer as a direct and proximate result of Virgin Atlantic's abusive conduct is at least $50,000 for each of the eight days Plaintiffs were deprived of their luggage (which includes the deprivation of the benefit of the value of the business class tickets Plaintiffs purchased) plus the $2,674.57 for the purchases outlined above, for a minimum damages amount of $402,674.57.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Montreal Convention)

80.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-79 above as if fully set forth herein.

81.     The Montreal Convention provides that an airline such as Virgin Atlantic is liable for damages caused by delayed delivery of luggage.

82.     Specifically, the Montreal Convention states, in Article 19, as follows:  "The carrier [here, Virgin Atlantic] is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo."

83.     Although Article 19 of the Montreal Convention provides an exception to liability when the carrier "proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures," that provision is inapplicable in this case because Virgin Atlantic did not take all measures it could reasonably have taken to avoid the damage Plaintiffs incurred and it certainly was not impossible for Virgin Atlantic to take such measures.

84.     That is, for example, Virgin Atlantic could easily have provided advance notice before June 19, 2022, when Plaintiffs left home for JFK, Virgin Atlantic could easily have added staff and enhanced luggage monitoring at Heathrow to ensure that those who spent extra money for a ticket that provided priority baggage handling would actually receive such priority treatment, and Virgin Atlantic could have provided ground support at Ben Gurion.

85.     Virgin Atlantic did none of those things:  Virgin Atlantic provided only a belated advisory on the luggage situation, did nothing to ensure that priority baggage treatment would be provided, and had no personnel on ground at Ben Gurion to handle the situation.

86.     In exchange for the price Plaintiffs paid for two round trip business class tickets from JFK to Israel, with a layover in Heathrow, Virgin Atlantic agreed to provide Plaintiffs with priority luggage handling.

87.     As aforesaid, Plaintiffs were not provided with priority luggage handling, even though they paid for that service.

88.     As a direct and proximate result of Virgin Atlantic's failure to hold up its end of the bargain concerning priority baggage handling, Plaintiffs were compelled to purchase the items listed above in the table set forth on pages 10-11 of this Complaint.

89.     All of the items purchased on that list were essential for a three-week trip that included Board meetings, a vacation at a resort, living in a foreign city, attending religious services, and exercise.

90.     As Virgin Atlantic failed to advise Plaintiffs if and when their luggage would be returned to them, Plaintiffs had to prepare for a substantial period of time without their luggage.

91.     As it turned out, Plaintiffs exercised good judgment in buying enough clothes and other essentials to last them a week, as they did not have their luggage until June 26, eight days after they checked their luggage with Virgin Atlantic.

92.     Thus, the workout gear, the everyday clothing, the modest and appropriate dress for Mr. and Ms. Gordon to wear at synagogue on the J Sabbath and at the meals that Plaintiffs were invited to attend by friends and colleagues, the toiletries, and the other items on the above list were all essential.

93.     The Montreal Convention further provides in Article 22(5) that while, in most cases, damages for delayed delivery of luggage is capped, where, as in the case at bar, the airline acts willfully or recklessly and causes damage to the passenger, there is no cap on damages.

94.     The provision at issue states that there is no damages cap "if it is proved that the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result; provided that, in the case of such act or omission of a servant or agent, it is also proved that such servant or agent was acting within the scope of its employment."

95.     Virgin Atlantic knew or should have known before June 19, 2022, when Plaintiffs left JFK, that there were major luggage handling problems at Heathrow that would likely result in Plaintiffs not receiving their luggage when they arrived in Israel.

96.     Indeed, given the number of press reports and photographs available worldwide prior to June 19, 2022, Virgin Atlantic should have known of the luggage problems and should have prepared to address that situation.

97.     That would have been the reasonable thing for an airline to do.

98.     Rather than act reasonably, Virgin Atlantic chose to act willfully or recklessly.

99.     As a result, Plaintiffs were damage, including being forced to pass up an important meeting they had scheduled at a nearby factory because they had to waste time shopping for replacement clothes and other items and waiting for their luggage to arrive.

100.    Given the egregious nature of Virgin Atlantic's' handling of this situation, including the grossly offensive treatment by "Darren" and the outright lie told by the Virgin Atlantic captain to the passengers on our flight (or the lie that Virgin Atlantic had the captain knowingly or unknowingly relate to the passengers), punitive damages are appropriate.

101.    Future passengers should not have to endure what Plaintiffs endured, and a punitive damages award will provide the disincentive that will deter Virgin Atlantic and other airlines from similar, abusive behavior.

102.    As a direct and proximate result of Defendants' willful or reckless misconduct, Plaintiffs were damaged in an amount to be proved at trial but no less than $402,674.57.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (For breach of contract)

103.    Plaintiffs repeat and reallege Paragraphs 1-102 as if fully stated herein.

17

104.    On or about March 9, 2022, Plaintiffs entered into a contract with Virgin Atlantic pursuant to which Plaintiffs agreed to pay $ 8,773.66 for two round trip business class tickets between JFK and Israel, and Virgin Atlantic agreed to provide those tickets, including the benefit of priority luggage handling.

105.    By paying the price for the tickets, Plaintiffs upheld their end of the bargain with Virgin Atlantic.

106.    Plaintiffs complied with all other contractual obligations attendant upon passengers for air travel purchasing tickets on Virgin Atlantic.

107.    On June 19, 2022, Plaintiffs boarded their flight to Israel, via Heathrow, but their luggage did not arrive in Israel when Plaintiffs arrived there because (a) Virgin Atlantic failed to ensure the proper loading of Plaintiffs' luggage, (b) Virgin Atlantic failed to provide the priority luggage service that Plaintiffs purchased when they purchased their business class tickets, and (c) either the captain of the Virgin Atlantic flight Plaintiffs boarded or the Virgin Atlantic ground crew who communicated with the caption lied about the luggage being on board and chose to leave without confirming that all pieces of luggage, including Plaintiffs', were actually on board.

108.    As other passengers, some of whom flew economy, received their luggage at Ben Gurion, Virgin Atlantic could have ensued that Plaintiffs' luggage arrived on Plaintiffs' flight.

109.    The fact that Plaintiffs' luggage was not received by them until June 26, 2022 makes clear that Plaintiffs did not provide the priority luggage service Plaintiffs purchased with their business class tickets.

110.    Virgin Atlantic's failure to provide priority baggage service, its failure to ensure that Plaintiffs' luggage was property loaded on to the plane that Plaintiffs boarded, and its

deceitful decision to leave Heathrow without first confirming that all passenger luggage was loaded on to the plane constitutes a breach of contract.

111.    As a direct and proximate result of Virgin Atlantic's breach of contract, Plaintiffs were damaged in an amount to be proved at trial but believed to be in excess of $402,674.57.

### AS AND FOR A THIRD CLAIM FOR RELIEF
(For *quantum meruit* and unjust enrichment)

112.    Plaintiffs repeat and reallege the allegations set forth above in Paragraphs 1-111 as if fully set forth herein.

113.    To the extent the contract pled above is found to be invalid, Virgin Atlantic will have been unjustly enriched by the value of the purchase price of the tickets Plaintiffs purchased.

114.    The value of those tickets is $8,773.66.

115.    By reason of the foregoing, Virgin Atlantic has been unjustly enriched at the expense of Plaintiffs in the amount of $8,773.66.

116.    The circumstances are such that equity and good conscience require Virgin Atlantic to make restitution or otherwise compensate Plaintiffs for the unjust enrichment Virgin Atlantic has enjoyed at the expense of Plaintiffs, in an amount to be proven at trial but believed to be in excess of $402,674.57.

**WHEREFORE**, Plaintiffs demand judgment against Virgin Atlantic as follows:

A.    On the First Claim for Relief, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $402,674.57, plus pre-judgment interest;

B.    On the Second Claim for Relief, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $402,674.57, plus pre-judgment interest;

C.      On the Third Claim for Relief, judgment for damages in an amount to be proven

at the time of trial, but believed to be in excess of $8,773.66, plus pre-judgment interest; and

D.      For such other and further relief as is just and proper, including without limitation

awarding Plaintiffs punitive damages as well as their reasonable attorneys' fees and court costs.

Dated: Katonah, New York
          July 11, 2022


GORDONLAW LLP


By:     Michael R. Gordon

*Attorneys for Plaintiffs*
*Michael Gordon and Rebecca Gordon*
51 Bedford Road, Suite 2
Katonah, New York  10536
914.232.9500
mgordon@gordonlawllp.com